**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

**GrowlerU Franco, LLC**, a Colorado Limited Liability Company doing business as Growler USA,

v.

**Pranay Prakash Srivastava**, an individual, **Sawankumar Patel**, an individual, **Someshwar LLC**, a North Carolina Limited Liability Company doing business as Lounge 74, and **Sun Valley Commons Pad 19, LLC**, a North Carolina Limited Liability Company

Defendants.

---

## COMPLAINT

---

Plaintiff GrowlerU Franco, LLC doing business as Growler USA ("Growler USA"), by and through its counsel, Allen Vellone Wolf Helfrich & Factor, P.C., hereby submits its Complaint against Defendants Pranay Prakash Srivastava, an individual, Sawankumar Patel, an individual, Someshwar LLC, a North Carolina Limited Liability Company doing business as Lounge 74, and Sun Valley Commons Pad 19, LLC, a North Carolina Limited Liability Company, and states as follows:

### PARTIES

1.      Plaintiff is a Colorado limited liability company with a principal place of business at 12503 E. Euclid Ave., Ste. 90, Centennial, Colorado 80111.

2.      Defendant Pranay Prakash Srivastava is a North Carolina citizen residing, upon information and belief, at 2010 Sandy Porter Road, Apt 108, Charlotte, NC 28273.

3.      Defendant Sawankumar Patel is a North Carolina citizen residing, upon information and belief, at 3517 Bronwin Street, Apt 102, Charlotte, NC 28273.

4.      Defendant Someshwar LLC is a North Carolina Limited Liability Company doing business as Lounge 74 with a principal office located at 6443 Old Monroe Rd Suite-A, Indian Trail, NC 28079.

5.      Defendant Sun Valley Commons Pad 19, LLC is a North Carolina Limited Liability Company with a principal office located at 231 Post Office Drive, Suite B8, Indian Trail, NC 28079.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a).

7.      According to the North Carolina Secretary of State's website, Sawankumar Patel and Pranay Prakash Srivastava are the sole managing members of Someshwar LLC.  Both Sawankumar Patel and Pranay Prakash Srivastava are North Carolina residents.

8.      According to the North Carolina Secretary of State's website, Sun Valley Commons Pad 19, LLC has two members, Andrew P. Bullard GST Trust and Clifford

E. Bullard GST Trust, and one manager, Dennis W. Moser Family GST.  Both members and the manager are North Carolina residents.

9.     Venue is proper pursuant to 28 U.S.C. § 1391 and that certain Growler USA Microbrew Pub Franchise Agreement and addendums dated March 22, 2016, (the "Franchise Agreement") which was breached and calls for venue in the District of Colorado.

## GENERAL ALLEGATIONS

### I.     BACKGROUND

10.     Growler USA began in 2014 in Eugene, Oregon as a beer growler refill station with designs on becoming a national American craft beer pub for beer lovers across the country.

11.     In furtherance of that vision, Growler USA has spent millions of dollars to develop, protect and promote its brand through, and for, its franchisees.

12.     Growler USA's franchise value is codified in its "Marks" and "System", both of which are defined below.  Growler USA allows franchisees to use its Marks and System because its franchisees agree that they will use them in accordance with the terms of Growler USA's franchise agreements.

13.     Growler USA has been recognized as one of the "Best Franchise Opportunities" since 2015 by franchiserankings.com.

### II.     The Franchise Agreement

14.     On or around March 22, 2016, Defendants Pranay Prakash Srivastava and Sawankumar Patel ("Individual Defendants") executed a Franchise Agreement with Growler USA.  A copy of the executed Franchise Agreement is attached hereto as Exhibit A.

15.     The Franchise Agreement permitted the Individual Defendants to operate a Growler USA franchise.

16.     On or about March 22, 2016, the Individual Defendants assigned their rights and obligations under the Franchise Agreement to Someshwar LLC, of which Individual Defendants were the sole members of (the "Assignment") (Individual Defendants and Someshwar LLC, collectively "Defendants").  A copy of the Assignment is attached hereto as Exhibit B.

17.     Under the Assignment, Individual Defendants jointly, severally, and unconditionally guaranteed that all obligations and liabilities under the Franchise Agreement would be paid, performed, and fulfilled.

18.     Pursuant to the Franchise Agreement and Assignment, Defendants affirmed that they understood their obligations under the Franchise Agreement.  The Franchise Agreement states:

> You have asked to enter into the business of operating a Microbrew Pub under our System and wish to obtain a franchise from us for that purpose, as well as to receive the training and other assistance we provide as described in this Agreement.   You also understand and acknowledge the importance of our high standards of quality, cleanliness, appearance, and service and the necessity of operating the

> business franchised hereunder in conformity with our standards and
> specifications.

Exhibit A, p.1.

19.   The "System" is defined as, among other things, "products, equipment

layouts, signage; distinctive interior and exterior design and accessories; operational

procedures; quality and uniformity of production and services offered; recipes,

procedures for management and inventory control; training and assistance; and

marketing programs." Exhibit A, p.1.   By entering into the Franchise Agreement,

Defendants understood and acknowledged "the necessity of operating the business

franchised…in conformity with [Growler USA's] standards and specifications."

Exhibit A, p.1.   Indeed, this promise to run the business exactly as prescribed lies at

the center of franchised businesses – the consistency of brand experience is

paramount.

20.   The Franchise Agreement also describes Growler USA's "Marks":

> We identify the System by means of our Marks.   Our Marks include
> certain trade names (for example, the marks and logos "Growler U",
> "Growler University" and "Growler USA" service marks, trademarks,
> logos, emblems, and indicia of origin, as well as other trade names,
> service marks, and trademarks that we may periodically specify in
> writing for use in connection with the System (all of these are referred
> to as our "**Marks**").   We continue to develop, use, and control the use of
> our Marks in order to identify for the public the source of services and
> products marketed under those marks and under the System, and to
> represent the System's high standards of quality, appearance and,
> service.
> Exhibit A, p.1.

21.     The Franchise Agreement's initial term was 10 years.   Exhibit A, ¶2.1.0. Defendants paid a franchise fee of $35,000.00, and were obligated to pay additional royalty fees, and Marketing Contributions to the Brand Fund going forward.   Exhibit A, ¶ 4.1 ("Initial Franchise Fee"), 4.2 ("Royalty Fee and Sales Reports"); ¶ 13 ("Marketing").

22.     The Franchise Agreement permitted Defendants to operate the franchise at 6443 Old Monroe Rd Suite-A, Indian Trail, NC 28079 (the "Approved Location").

23.     Sun Valley Commons Pad 19, LLC ("Landlord") currently is, and was, the owner and landlord of the Approved Location.

24.     Landlord executed that certain Commercial Lease Agreement (the "Lease") with Someshwar on November 22, 2019, where it agreed, among other things to lease the Approved Location to Defendants for operation of the Growler USA franchise.  A copy of the Lease is attached hereto as Exhibit C.

25.     The Lease had a ten year term with three five year renewal options.

26.     Among other things, Exhibit J to the Lease, which was executed by Landlord and Someshwar, required that the Approved Location only be used for the operation of a Growler USA Microbrew Pub business.  Defendants and Landlord accepted the rights and obligations outlined in Exhibit J.

27.     Growler USA accepted and approved the Lease with respect to Exhibit J.

28.     By its contractual terms, Defendants also accepted the rights and obligations outlined in the Franchise Agreement.  Specifically, they contracted to operate a Growler USA Microbrew Pub under the System and the primary Mark identified on Exhibit A to the Franchise Agreement at the Approved Location. Exhibit A, ¶ 1.1.1.

29.     The Franchise Agreement provided details and specifications concerning how the Microbrew Pub was required to be configured and run under the System and Mark.  Those details and specifications include, among other things:

    a.   Standard layout (Exhibit A, ¶ 3.1);

    b.   Site selection and lease review (Exhibit A, ¶ 3.1);

    c.   Employee training (Exhibit A, ¶3.2);

    d.   Operations manual (Exhibit A, ¶ 3.4);

    e.   Opening marketing materials and funds (Exhibit A, ¶ 3.3-3.6);

    f.   Financial reporting to Growler USA (Exhibit A, ¶ 12);

    g.   Technology (Exhibit A, ¶ 14);

    h.   Marketing (Exhibit A, ¶ 13);

    i.   Insurance (Exhibit A, ¶ 15); and

    j.   The "point of sale" ("POS") system (Exhibit A, ¶ 14.7).

30.     Of course, in  order to create a uniform experience, the aforementioned terms are the same for all Growler USA's franchisees.

31.     Growler USA's System, including the training, marketing, guides, policies and procedures, among other things, constitutes valuable trade secrets and confidential information of Growler USA, the receipt of which conferred a benefit upon the Defendants.  Exhibit A,¶ 17.2.  The System is protected and not given to others without signing the Franchise Agreement.  The System has significanr value which is why franchisees, such as Defendants, pay for it.

32.     By executing the Franchise Agreement, Defendants agreed that the trade secrets were confidential, owned by Growler USA, and valuable.  Exhibit A, ¶ 10 ("Confidential  Operating Manual,"); ¶ 11 ("Confidential Information").

33.     The value of Growler USA's trade secrets is set forth in the Franchise Agreement's covenants, including the following "Understandings":

> 17.2 *Understandings.* 17.2.1.  You acknowledge and agree that: (a) pursuant to the Agreement, you will have access to valuable trade secrets, specialized training and  Confidential Information from us and our affiliates regarding the development, operation, management, purchasing, sales and marketing methods and techniques of the System; (b) the System and the opportunities, associations and experience we have established and that you will have access to under this Agreement are if substantial and material value; (c) in developing the System, we and our affiliates have made and continue to make substantial investments of time, technical and commercial research, and money; (d) we would be unable to adequately protect the System and its trade secrets and Confidential Information against unauthorized use or disclosure and would be unable to adequately encourage a free exchange of ideas and information among

> franchisees in our system if franchises were permitted to hold interests in Competitive Businesses (as defined below); and (e) restrictions on your right to hold interests in, or perform services for, Competitive Businesses will not unreasonably or unnecessarily hinder your activities.

Exhibit A, ¶ 17.2.1.

34.    Based upon the benefits that were conferred upon them as franchisees, Defendants agreed not to compete or engage in injurious conduct during the term of the Franchise Agreement and for two years after, within five miles of the Approved Location.   Exhibit A, ¶ 17.3 ("Covenant Not to Compete or Engage in Injurious Conduct").

35.    Specifically, Defendants agreed not to "[o]wn, maintain, develop, operate, engage  in, franchise, or license, make loans to, lease real or personal property to, and/or have any interest  whatsoever in, or render services or give advice to any Competitive Business."   Exhibit A, ¶ 17.3.3.   A "Competitive Business" is defined broadly as a business "…whose  method of operation or trade dress is similar to that employed in the System."  Exhibit A, ¶ 17.2.2.

36.    Likewise, Defendants agreed not to "[d]ivert or attempt to divert any actual or potential business or customer of Growler USA Microbrew Pub to any competitor or otherwise take any action injurious or prejudicial to the goodwill associated with the Marks and the System." Exhibit A, ¶ 17.3.1.

37.   Defendants agreed to the extension of these covenants and others to their "Highly Trained Personnel", employees, supervisors and "Principals."  Exhibit A, ¶ 17.8.

38.   The Defendants acknowledged when entering into the Franchise Agreement that they investigated the business possibilities available to them, that Growler USA made no warranties or guarantees, and that success depended on their own actions.  Exhibit A, ¶ 28.1, ¶ 28.2 and ¶ 28.9.  Discussions between the Parties before execution of the agreement are not part of the Parties agreement because of "integration" clauses in the Franchise Agreement.

39.   Moreover, both the Franchise Agreement and the Assignment required Defendants to waive any claims against Growler USA upon execution.  Exhibit A, ¶ 28.10; Exhibit B, ¶ 6.

40.   The parties to the Franchise Agreement acknowledged and agreed that any claims that Defendants may have against Growler USA may not be used as a defense against Growler USA's claims for Defendants violation of any restrictive covenants.  Exhibit A, ¶17.10.

## III.   Breach of Franchise Agreement

41.   By entering into the Franchise Agreement, Defendants gained the benefit of Growler USA's training, its Marks and the System.

42.     It used that valuable information to open and operate a Growler USA brewpub at the Approved Location.

43.     Growler USA and Defendants had worked together for a significant period of time to identify an acceptable Approved Location in Indian Trail, North Carolina.

44.     Defendants accepted the benefit of Growler USA's System, Marks, promotional efforts regarding the opening and operation of their location, which included maps and directions to the Approved Location, and opened a Growler USA facility at the Approved Location on or around November 22, 2016.

45.     By all accounts, the Indian Trail's franchise received full and complete training, support and education and opened the location with full use of all of Growler USA's systems, marks and intellectual property and was, therefore, primed for success.

46.     Under Section 1.5 of the Franchise Agreement, while operating the franchise, Defendants agreed to "faithfully, honestly and diligently perform [their] obligations under [the Franchise Agreement], that [they] will continuously exert [their] best efforts to promote and enhance the Franchised Business, and that [they] will not engage in any other business or activity that may conflict with [their] obligations under" the Franchise Agreement. *See also,* Exhibit A,¶ 9.2.9 ("You agree not to directly or indirectly engaged in any activities that would be detrimental to or

interfere with the operation, reputation, or goodwill of the Franchised Business, us or the System…"); and, ¶ 17.1 ("Best Efforts" provision).

47.     However, instead of complying with their obligations under the Franchise Agreement, Defendants changed the name of the brewpub at the Approved Location from Growler USA to Lounge 74, on or around August 23, 2019.

48.     Growler USA did not, and would not, approve this unilateral change,  in obvious breach of the Franchise Agreement, for Defendants' own benefit and to the detriment of Growler USA.

49.     Indeed, under the Franchise Agreement, Defendants agreed to use the Marks and System only in connection with the Franchised Business.   Exhibit A, ¶1.1.2 & 9.2.

50.     Defendants understood that their right to use the Marks was "limited to such uses as are authorized under [the Franchise Agreement], and any unauthorized use thereof shall constitute an infringement of [Growler USA's] rights."   Exhibit A, ¶9.2.5.

51.     Defendants are currently and/or have operated their Competitive Business—as defined by the Franchise Agreement—while still using Growler USA's Marks and System.   For instance, Lounge 74's food menu is substantively identical to the approved Growler USA food menu.

52.     Defendants also placed a Lounge 74 sign at the Approved Location in violation of the Franchise Agreement that required them to not install "signs or other items" that Growler USA had not yet approved.  Exhibit A, ¶ 8.8.3.  Growler USA did not and would not approve such a sign.

53.     And Defendants are promoting their business to the detriment of Growler USA.   The Franchise Agreement addressed local marketing as part of the promotion of its brand.  Exhibit A, ¶ 13.5.  It also addressed internet marketing.  It provided that "Unless we have otherwise approved in writing, you agree to neither establish nor permit any other party to establish an online Site relating in any manner whatsoever to the Franchised Business or referring to the Marks."  Exhibit A, ¶ 14.6; *see also,* ¶ 14.8.2.  Defendants have a Facebook page dedicated to marketing Lounge 74.  Growler USA did not, and would not, approve that Facebook page.

54.     Moreover, under the Franchise Agreement, the Defendants agreed to require their staff to wear particular uniforms.  Exhibit A, ¶ 7.3.  The Defendants also agreed to allow Growler USA to train their staff. Exhibit A, ¶ 6.  Upon information and belief, the Defendants continue to employ their Growler USA staff under the Lounge 74 name in violation of the Franchise Agreement.  Exhibit A, ¶ 17.3.2.

55.     Furthermore, the Franchise Agreement provides that the Defendants "will only offer and sell items (including Products) face-to-face to retail customers for

consumption on [the Defendants'] Microbrew Pub's premises…that compl[y] with the standards set out in the Manual." The suppliers available to the Defendants were to be identified and approved in writing by Growler USA.   Exhibit A, ¶ 7.  Defendants are now offering non-complaint, unapproved beverage and menu items, using, upon information and belief, alternate vendors, in violation of the Franchise Agreement, and continue to use other approved vendors, based upon contracts negotiated while they were operating as Growler USA.

56.   Growler USA has the right to declare the Defendants in default of the Franchise Agreement with notice and without right to cure because, most importantly, they abandoned the Franchised business.  Exhibit A, ¶ 19.2.3.  This right also exists because of Defendants' breach of covenants in paragraph 17 of the Franchise Agreement.  Exhibit A, ¶ 19.2.9.

57.   Accordingly, on September 13, 2019, Growler USA terminated the Franchise Agreement.

58.   Upon termination of the Franchise Agreement, the Defendants were required to, among other things, cease operations, stop using Marks and intellectual property, and not oppose Growler USA's efforts to enter and continue operations at the Approved Location.  Exhibit A, ¶  20.10.

59.   The Franchise Agreement also required Defendants to sign a lease that allowed Growler USA "the right to elect to take an assignment of the leasehold

interest upon termination…of [Defendants'] rights under this [Franchise] Agreement…"   Exhibit A, ¶ 5.2.1.

60.   To date, despite repeated demands, Defendants have refused to 1) cease operations; 2) return the Approved Location to Growler USA's name; and/or 3) allow Growler USA to enter  the Approved Location and resume operations as Growler USA.

61.   Likewise, Landlord executed Exhibit J to the Lease (Exhibit C), which provided that "[e]ffective upon any termination or non-renewal of the Franchise Agreement, Franchisee hereby assigns under this Addendum to Franchisor, with Landlord's irrevocable and unconditional consent, all of Franchisee's rights, title and interests to and under the Lease."  Exhibit J to Exhibit C, § 3.

62.   As between Landlord and Growler USA, that assignment became effective when "(a) the Franchise Agreement is terminated or expires without renewal; (b) Franchisor has exercised its option to purchase Franchisee's assets under the Franchise Agreement; and (c) Franchisor notifies the Franchisee and Landlord in writing that Franchisor has assumed all of Franchisee's obligations under the Lease." Exhibit J to Exhibit C, § 3.

63.   On September 20, 2019, Growler USA notified Landlord that it had terminated the Franchise Agreement, was not exercising its options to purchase Defendants' assets, and was assuming Defendants' obligations under the lease.

64.     On September 24, 2019, Landlord acknowledged and agreed to the assignment.

65.     Despite the assignment, and Landlord's acknowledgement of the same, Defendants, with Landlord's express consent, continue to unlawfully operate Lounge 74 at the Approved Location

66.     Landlord and Defendants have refused to return the Approved Location to Growler USA.

67.     Defendants' and Landlord's actions violate the Franchise Agreement and Exhibit J to the Lease (Exhibit C), including those provisions that require that the Approved Location may only be used for the operation of a Growler USA franchise. *See ex.* Exhibit A, ¶ 8.4.1; Exhibit J to Exhibit C.  Those agreements make clear that no other business may operate at the Approved Location.

68.     Defendants actions also continue to violate the aforementioned restrictive covenants in the Franchise Agreement which provide that Defendants may not operate a competitive business within five (5) miles of the Approved Location or within five (5) miles of another Growler USA Microbrew Pub.  Exhibit A, ¶17.  The Approved Location itself would clearly fall within this restricted territory.

## IV.   Damages

69.     Growler USA is suffering irreparable harm as a result of its customers patronizing Lounge 74 instead of Growler USA.

70.     Furthermore, Defendants' actions have not gone unnoticed.   Other franchisees have contacted Growler USA owners to complain about the actions of the Defendants.  If Defendants' conduct is not stopped, there will be a negative, cascading effect amongst Growler USA's other franchisees.

71.     In recognition of these unquantifiable damages, Defendants acknowledged that their violation of restrictive covenants "would result in irreparable injury" to Growler USA to which no adequate remedy at law may be available and consented to the issuance of an injunction prohibiting conduct in violation of Section 17.   Exhibit A, ¶ 17.12 ("*Defaults.*  You acknowledge that your violation of the terms of this Section 17 would result in irreparable injury to us **for which no adequate remedy at law may be available, and you accordingly consent to  the issuance of an injunction prohibiting any conduct in violation of the terms of this Section 17**." (emphasis added))   Defendants understood that Growler USA retained the right to seek an injunction, without posting a bond or other security.  Exhibit A, ¶ 27.5.

72.     Also, Defendants are no longer making royalty fee or marketing fund payments as they are contractually required to do.

73.     The Franchise Agreement provides for Growler USA's recovery of all "damages, costs, and expenses (including but not limited to reasonable attorneys'

fees, court costs, and all other related expenses)… (in addition to other remedies that we may have).   Exhibit A, ¶ 20.8 & 27.9.

74.    Growler USA has been significantly harmed by Defendants' and Landlord's conduct.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment against Defendants and Landlord)

75.    Growler USA repeats and realleges the foregoing allegations as if set forth fully herein.

76.    There is an actual claim or controversy between Growler USA and Defendants and Landlord concerning the application and enforcement of the Franchise Agreement and the Lease.

77.    Growler USA, as a party whose rights are affected by the Franchise Agreement, has standing to ask this Court to construe agreements between Growler USA, Defendants, and Landlord and to obtain a declaration of its rights under those agreements. A declaration by this court will resolve, in large part, the dispute between the parties.

78.    All necessary parties are before the Court.

79.    Growler USA therefore seeks a declaration that: (a) the Defendants and Landlord are in default of their obligations under the Franchise Agreement and Lease; (b) Defendants and Landlord must not obstruct Growler USA's attempts to exercise its rights under Paragraph 20.10 of the Franchise Agreement and section 3

of Exhibit J and enter the Approved Location for the purpose of continuing the franchise operation (including transfer of the liquor license) and maintaining the goodwill of Growler USA's franchise.

## SECOND CLAIM FOR RELIEF
### (Injunctive Relief against Defendants and Landlord)

80.     Growler USA repeats and realleges the foregoing allegations as if set forth fully herein.

81.     Growler USA is entitled to preliminary and permanent injunction.

82.     Growler USA has a reasonable probability of success on the merits, given that Defendants breached the Franchise Agreement by rebranding the Approved Location and not ceasing its unauthorized operations at the Approved Location.

83.     Growler USA has a reasonable probability of success on the merits, given that Landlord breached the Lease by allowing Defendants to operate a non-Growler USA brand at the Approved Location and not allowing Growler USA to assume Defendants' obligations under the lease.

84.     There is a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief.

85.      There is no other plain, speedy, and adequate remedy at law.  Injunctive relief is the only way to limit the damage that Defendants and Landlord have caused Growler USA.  Money damages are insufficient to make Growler USA whole.

86.     The granting of a preliminary injunction will not disserve the public interest.  Rather, the public has an interest in holding contracting parties to the benefit of their bargain.

87.     The balance of equities favors the injunction.  If a preliminary injunction is not entered, the prejudice to Growler USA far outweighs any prejudice to Defendants or Landlord if a preliminary injunction is entered.

88.     Finally, an injunction will preserve the status quo pending a trial on the merits given that the status quo is for Defendants to operate the Approved Location as a Growler USA brewpub.  Injunctive relief will do nothing more than prevent Defendants from causing any more harm to Growler USA and maintain the status quo as it existed prior to Defendants' illegitimate conduct.

89.     The Franchise Agreement provides that no bond is necessary for such an injunction.  Exhibit A, ¶ 27.5.

90.     Thus, to avoid irreparable injury, Growler USA requests that the Court issue a preliminary and permanent injunction, preventing Defendants from continuing operations at the Approved Location and directing that Defendants and Landlord must not oppose Growler USA's efforts to enter and continue operations at that Approved Location, including transfer of the liquor license.

### THIRD CLAIM FOR RELIEF
### (Breach of Franchise Agreement against Defendants)

91.    Growler USA repeats and realleges the foregoing allegations as if set forth fully herein.

92.    Growler USA and the Defendants entered into the Franchise Agreement

93.    Growler USA fully performed its duties under the Franchise Agreement.

94.    Defendants breaches under the Franchise Agreement arise from them converting the Growler USA franchise to Lounge 74.

95.    As a direct and foreseeable result of Defendants' breaches of the Franchise Agreement, Growler USA has suffered non-monetary and direct and consequential damages in an amount to be proven at trial.  Growler USA has also been forced to incur legal fees which are subject to fee shifting provisions in the Franchise Agreement.  Exhibit A, ¶ 9.2.10.4, ¶ 11.2 ("Consequences of Breach"), ¶ 20 & 27.

96.    Growler USA has been harmed by Defendants' actions in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### (Breach of Lease against Defendants and Landlord)

97.    Growler USA repeats and realleges the foregoing allegations as if set forth fully herein.

98.    Landlord and Defendants entered into Exhibit J to the Lease (Exhibit C) which provides that the Approved Location may only be used as a Growler USA franchise.

99.    Growler USA accepted and approved the Lease as to Exhibit J only and is a party to Exhibit J.

100.    Under Exhibit J, Growler USA is an intended third-party beneficiary.

101.    Defendants are not operating a Growler USA franchise at the Approved Location.

102.    Under Exhibit J, Landlord may not obstruct Growler USA's efforts to enter and continue operations of a Growler USA brew pub at that Approved Location.

103.    In fact, Landlord agreed that the Lease had been assigned to Growler USA pursuant to Section 3 of Exhibit J.

104.    In breach of Exhibit J to the Lease,  Defendants and Landlord refuse to turn over the Approved Location to Growler USA.

105.    Growler USA has performed under the Lease and all related exhibits.

106.    Growler USA has been harmed by Defendants' and Landlord's breach of the Lease in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Growler USA respectfully requests that the Court enter judgment and other orders in favor of Growler USA and against the Defendants and Landlord as follows

A. Declare that Defendants are in default and must cease and desist all operations and allow Growler USA to enter and continue operations pursuant to Paragraph 20.10 of the Franchise Agreement;

B. Enter a preliminary injunction enjoining Defendants from continuing operations at the Approved Location and directing that Defendants and Landlord may not obstruct Growler USA's efforts to enter and continue operations of a Growler USA brew pub at that Approved Location including transfer of the liquor license;

C. Enter a permanent injunction enjoining Defendants from continuing operations at the Approved Location and directing that Defendants and Landlord may not obstruct Growler USA's efforts to enter and continue operations of a Growler USA brew pub at that Approved Location;

D. Award Growler USA damages for Landlord's and Defendants' breaches;

E. Award Growler USA its reasonable attorney fees and costs incurred in pursuing this action in accordance with applicable law and such other and further relief as this Court deems just and proper.

DATED: January 7, 2020.

By: *s/ Jeremy T. Jonsen*
Patrick D. Vellone, #15284
Jeremy T. Jonsen, #48859
1600 Stout Street, Suite 1100
Denver, Colorado 80202
(303) 534-4499
E-mail: pvellone@allen-vellone.com
E-mail: jjonsen@allen-vellone.com
*Attorneys for the Plaintiff*

**Plaintiff's Address**:
12503 E. Euclid Ave., Ste. 90
Centennial, Colorado 80111